**Lillian O. HALE, Plaintiff–Appellee,**

v.

**CUYAHOGA CO. WELFARE DEPT., et al., Defendants–Appellants.**

No. 88–3839.

United States Court of Appeals, Sixth Circuit.

Submitted July 31, 1989.

Decided Dec. 19, 1989.

Joseph M. Lhota, Carl I. Utrata, Lakewood, Ohio, for plaintiff-appellee.

Patrick J. Murphy, Michael D. Pokorny, Office of the Prosecuting Attorney, Cleveland, Ohio, for defendants-appellants.

Before WELLFORD and NELSON, Circuit Judges; and TAYLOR, District Judge.*

WELLFORD, Circuit Judge.

Plaintiff, a black-female employee of the Cuyahoga County Welfare Department (the Department) from May 1961 until her retirement in June 1987, sued for a failure to promote her. For seventeen years, Hale had worked in the position known as Social Services Supervisor I in the Department. She was employed in the Separate Administrative Unit–Work Incentive Program division of the Department. This unit was supervised by an Administrator, the Coordinator (a Social Services Supervisor II), and the Assistant Coordinator (a Social Services Supervisor I). The unit had six supervisors (all of supervisor I classification), each of whom supervised five to six social service workers, the people who actually assisted and counseled public assistance recipients.

In August of 1981, Hale applied to fill the position of Coordinator when the previous holder of that position, Ronald Smith, also a defendant, was promoted to Administrator. Her application was rejected at the time, allegedly due to a county-wide hiring freeze. An Assistant Coordinator, Edmund Hanna, however, was designated to be the "acting" Coordinator. When Hale was not named to this position she filed a complaint with the Equal Employment Opportunity Commission (EEOC). The complaint was settled; the Department agreed that it would follow its written personnel policies when the time came to fill the Coordinator position and that it would review all candidates without regard to sex, race, religion, or national origin. Defendant further agreed that it would notify the Commission and all those in the position of Supervisor

when the coordinator's position opening was permanently filled.

In February 1983, the Department posted the position of Social Services Supervisor II (Coordinator), the position left vacant after Smith's promotion. Approximately twenty individuals applied. After an initial screening for minimal initial qualifications, ten applicants, including both Hale and Hanna, were deemed preliminarily qualified. These ten were interviewed by defendant Smith and Havericak, the other defendant, the prospective direct supervisors of the individual to be selected as Coordinator. Following the interviews, Hanna was selected to fill the position of Coordinator.

Hale then filed a second charge with the EEOC, alleging that she was denied the promotion for discriminatory reasons, and in retaliation for the earlier charges she had filed against the Department. On December 6, 1983, the EEOC determined that no reasonable cause existed to believe Hale's charges, and issued her a right to sue letter. She filed this timely lawsuit. Hale requested the EEOC to investigate again its findings, which it proceeded to do. On June 19, 1986, the EEOC confirmed its finding of no reasonable cause after further investigation, and this case proceeded to trial.

Hale claimed that she was denied the promotion in question on the basis of her sex, race, and as retaliation for her earlier filing of a discrimination charge against the Department.

The case proceeded to trial before the district court on the Title VII claim and before a jury on the 42 U.S.C. § 1983 claim. The district court, 722 F.Supp. 349, entered judgment, however, in favor of the defendants on the issue of race discrimination only, having accepted plaintiff's withdrawal of another claim based upon breach of contract. The court withdrew the remaining 42 U.S.C. § 1983 claims from consideration of the jury. The district court entered

---

* The Honorable Anna Diggs Taylor, United States District Court for the Eastern District of Michi-

gan, sitting by designation.

judgment in favor of the plaintiff on her claims of sex discrimination, and entered judgment in favor of the defendants on the claim of retaliation. The plaintiff was granted monetary damages in the amount of $20,123.96, representing back pay and interest thereon. The court further awarded the plaintiff reasonable attorney's fees and costs. Defendant Welfare Department appealed from the adverse judgment. Plaintiff did not cross-appeal.

The plaintiff's claims are based on the concept of "disparate treatment" that resulted from sex discrimination. Plaintiff also claims that the defendants retaliated against her because she had previously filed a charge of discrimination against them with the EEOC. The Title VII claim and the § 1983 claims are essentially similar and based on the same course of conduct.

The district court properly followed a three-step process in analyzing and reviewing the claim of discrimination based on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The first step requires plaintiff to prove a prima facie case of discrimination. The plaintiff need only demonstrate that she is a member of a protected class, that she applied for and was qualified for a position for which the employer sought applicants, that she did not receive the position, and that there exists a causal connection between her sex and the treatment she received in respect to defendant's choice of a person of another sex. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. The "causal connection" step generally is met simply by showing that the position in question was awarded to a member of the opposite sex, in this case a white male.

After the plaintiff has established a prima facie case of discrimination, the burden of production shifts to the defendants to show evidence of a legitimate, nondiscriminatory reason for its action in hiring the male. The court below found that the defendants did produce evidence of legitimate, nondiscriminatory reasons, and we find ourselves in agreement with this finding.

In the third step, the burden shifts back to the plaintiff to prove intentional discrimination. *Grano v. Department of Dev., City of Columbus,* 637 F.2d 1073, 1081 (6th Cir.1980). In the absence of direct testimony or evidence rebutting the defendant's assertions, the plaintiff may meet this burden by demonstrating that the defendant's legitimate, nondiscriminatory reasons are merely a "pretext," intended to disguise the true reasons or motives for the treatment accorded the plaintiff. *Cooper v. City of North Olmsted,* 795 F.2d 1265, 1271 (6th Cir.1986).

The trial court found that the reasons offered by the defendant were not the "real reasons" for promoting Hanna instead of Hale. Rather, the district judge found that the claimed legitimate, nondiscriminatory reasons offered by the defendants were merely pretextual, and concluded finally that plaintiff thus carried her ultimate burden of proving intentional sex discrimination.

After examining the entire record, we are convinced that the district court erred in finding that defendant's articulated business reasons were pretextual. Several factors set out appear to us to be reasonable bases for making a distinction between the plaintiff and Hanna. The latter entirely was selected as Coordinator because he had "thirteen years of service, including extensive supervisory experience, had completed two years of college, had outstanding performance evaluations, and was well-respected by his peers."[1] Hale was herself well qualified for the position. A distinguishing factor is that Hanna had "extensive supervisory experience" that Hale was lacking. Much of this supervisory experience came from Hanna's service

---

1. Plaintiff claims in her complaint that she had a degree from Stillman College in Tuscaloosa, Alabama.

as "acting" Coordinator from 1981 to 1983. Hanna had substantial supervisory experience aside from his service as "acting" Coordinator that gives him an edge in that respect over the plaintiff.

The district judge noted that "in the intake co-location Mr. Hanna had more interaction with people in outside agencies than Mrs. Hale had in the service provision location." He also found that "Mr. Hanna was promoted and given more serious consideration than Mrs. Hale because he had better supervisory skills and experience interacting with other agencies." The district court also found that Hanna was chosen as "acting" Coordinator because the defendants "liked working with him, thought he was a good supervisor, and thought he interacted well with those in other agencies," all of which are legitimate business reasons for his selection. None of these reasons for selection may properly be considered mere pretext.

The direct evidence presented by the plaintiff to show actual discrimination is miniscule testimony that a different female employee was not selected in 1974 as "acting" Coordinator because "she was deemed to be too aggressive." We cannot consider this as evidence of discriminatory treatment toward Hale nor of females generally. The statistical evidence presented by the plaintiff as to the number of male and female employees in supervisory roles is entirely inconclusive. Three administrators in Hale's division are males but five of the six first-line supervisors were females. More important, the two individuals who ultimately approved Hanna's selection were the Deputy Director and the Director, both females. The individual defendants Smith and Havericak had no actual authority to promote Hanna, but only recommended their selection to their supervisors, both women. We find no substantial basis for the district court's finding of a "chummy fraternal relationship existing in upper management levels."

Based on this evidence, the district court's finding of intentional discrimination cannot be sustained. The district court's role here was not to determine which candidate it felt out of the ten finalists should have been chosen for promotion. *Cooper v. City of North Olmsted*, 795 F.2d at 1271–72. Rather, the court is to examine the motivations behind an employment decision and ferret out those that are impermissible and pretextual. *Id.* at 1272. Hale presented essentially no direct evidence of discriminatory intent, and no persuasive circumstantial evidence from which discriminatory intent could be reasonably inferred. The defendants articulated substantial and legitimate factors that would allow the employer to distinguish fairly between Hanna and Hale, without regard to sex. The ten finalists for the job in question included six white and four black candidates, six were male and four were female, three of whom were black females. There was uncontradicted testimony, moreover that two other black females would have been selected, had Hanna not been chosen, both of whom had many years experience and college degrees, and even deemed superior in qualifications to Hale.

We conclude, therefore, that the district court was clearly erroneous in finding any causal relationship between defendants' actions and the failure to select plaintiff from among twenty applicants for the position she sought.

We therefore REVERSE the decision of the district court and enter judgment for defendants.