**KENTUCKY CENTER FOR THE ARTS, Appellant,**

v.

**Mary Marie HANDLEY and Louisville and Jefferson County Human Relations Commission, Appellees.**

**No. 89–CA–001001–MR.**

Court of Appeals of Kentucky.

Nov. 8, 1991.

Discretionary Review Denied by Supreme Court May 6, 1992.

Jon L. Fleischaker, Mary Ann B. Main, Stephen R. Price, Louisville, for appellant.

Kevin R. Winstead, Louisville, for appellee Louisville and Jefferson County Human Relations Com'n.

Mary Marie Handley, pro se.

Before LESTER, C.J., and EMBERTON and MILLER, JJ.

EMBERTON, Judge:

Kentucky Center for the Arts appeals from a judgment of the Jefferson Circuit Court which affirmed the Louisville and Jefferson County Human Relations Commission holding that the Center had discriminated against Mary Marie Handley based on her race and sex. The narrow

question before this court is whether the employer met its burden of proof in showing that legitimate, nondiscriminatory reasons existed for not promoting the appellee.

Ms. Handley, a black female, was first employed by the Center in 1983 as a ticket agent. In February, 1985, one of the two assistant ticket sales managers took maternity leave and Ms. Handley was chosen by the ticket manager, Linda Stilmack, to fill the position on an interim basis. Ms. Handley held the post until May, 1985, when for economic reasons, it was terminated and she was returned to her position as a ticket agent. After Ms. Stilmack's assistant elected not to return after maternity leave, the position was posted as available, and Ms. Handley became one of seven applicants for the opening. In August, 1985, Stilmack selected Mark Craven, a white male, to fill the vacancy. In September, 1985, Ms. Handley filed a discrimination complaint with the Commission.

In October, 1985, Mr. Craven left employment with the Center and Ms. Stilmack again posted the position; Ms. Handley once again applied. After interviewing five applicants, Kent Metcalf, a white male ticket agent who had been initially hired at the Center approximately one year after Ms. Handley, was selected to fill the position. In January, 1986, Ms. Handley amended her complaint with the Commission, alleging that the Center's failure the second time to grant the position to her was in retaliation for filing the initial complaint.

A three-member panel of the Commission held hearings in February, 1988, in which Ms. Handley and Ms. Stilmack testified. In July, 1988, the Commission determined that Ms. Handley had been the victim of discrimination and awarded her backpay and $1,500 for embarrassment and humiliation. This decision was affirmed by both the full Commission and the Jefferson Circuit Court. The Center appeals.

Louisville Ordinance No. 116, Series 1968, as amended by Ordinance No. 139, Series 1975, prohibits employers from discriminating against employees and from depriving them of "employment opportunities" on grounds of race or sex. The ordinance is substantially the same as KRS 344.040 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Because of the similarity, we are guided by federal case law in the course of our review. *White v. Rainbo Baking Company,* Ky.App., 765 S.W.2d 26 (1988).

An employment discrimination action unfolds in three stages. First, the plaintiff must make a *prima facie* case of discrimination by offering proof that, 1) she is a member of a protected class, 2) she is qualified for and applied for an available position, 3) she did not receive the job, and 4) the position remained open and the employer sought other applicants.[1] *McDonnell–Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Second, the employer must then articulate a "legitimate nondiscriminatory" reason for its action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Third, once such a reason is given, it is incumbent on the employee to demonstrate that the stated reason is merely a pretext to cover the actual discrimination. *Id.* at 256, 101 S.Ct. at 1095.

The Center incorrectly contends that Ms. Handley failed to make her *prima facie* case in that she did not prove she was "as qualified" as the two white males who were given the position. After a review of the record, we find that Ms. Handley proved, by a preponderance of the evidence, that she was objectively qualified for the position. At this preliminary stage of the *McDonnell–Douglas* scheme of proof, it was not her burden to persuade the Commission that she was as qualified as the applicant who filled the position.[2]

---

1. This requirement is satisfied upon a showing that the position was awarded to a member of an unprotected class. *Hale v. Cuyahoga County Welfare Dept.,* 891 F.2d 604 (6 Cir.1989).

2. Proof that Handley was as qualified or more qualified to fill the position is more appropriately introduced at the third stage of the *McDonnell–Douglas* scheme in that it may be used to rebut the employer's articulated business reason

*Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Nor was it her burden, at this stage, to refute the Center's claim that she did not meet the subjective criteria for the job position.

> [O]bjective job qualifications are best treated at step one and subjective criteria ... are best treated at the later stages of the process. To do otherwise would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved. This would defeat the purpose underlying the McDonnell–Douglas process.

*Lynn v. Regents of the University of California,* 656 F.2d 1337 (1981), U.S. *cert. denied,* 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982). After a review of the record, it is clear that Ms. Handley established a *prima facie* case of discrimination. She has a Bachelor of Science Degree in theatrical arts, and she worked at the Center in ticket sales and as a temporary assistant manager. Significantly, Ms. Stilmack admitted that Ms. Handley was qualified for the position.

■ The establishment of a *prima facie* case is a threshold, but, if left unrefuted, judgment must be entered in the plaintiff's favor. *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094. However, the burden of refuting the *prima facie* case need not be met by persuasion; the employer need only articulate with clarity and reasonable specificity, a reason unrelated to a discriminatory motive, and is not required to persuade the trier of fact that the action was lawful. *Id.* at 258, 101 S.Ct. at 1096.

■ We agree with the trial court's finding that the Center provided a legitimate, nondiscriminatory reason for failing to promote Handley. Ms. Stilmack testified that Ms. Handley was not given the first promotion because Mr. Craven was better qualified, having had almost three years in a managerial position. While Stilmack stated that Handley and Metcalf were equally qualified based on effective crite-

ria, she testified that in the past Handley had demonstrated a lack of self-confidence, was unreliable, and expressed a lack of flexibility in her work schedule. Employee records introduced by the Center revealed that Ms. Handley had been tardy in the past and her performance evaluations reflected only a "standard" marking in the areas of attitude, judgment, and attendance.[3]

■ While the protections given an employee against discriminatory practices prohibit selections based upon discriminatory criteria, they are not so ominous as to prohibit an employer from using his discretion in choosing among qualified candidates. *Id.* at 259, 101 S.Ct. at 1096. Attitude, commitment to the work, flexibility, and other nondiscriminatory criteria are legitimate reasons for failure to hire or promote an individual. *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.,* 783 F.2d 50 (6th Cir.1986), U.S. *cert. denied,* 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986). The Center's reason for not promoting Ms. Handley refuted the *prima facie* case of discrimination.

■ Once the *prima facie* case is refuted, the inquiry proceeds to a new level of factual specificity requiring the plaintiff to prove her ultimate burden of persuading the trier of fact that she is the victim of intentional discrimination and that the reasons given by the employer are merely pretextual. The intent requirement may be satisfied by direct allegations and proof of invidious discriminatory bias, or circumstantially demonstrated by alleging or proving discriminatory conduct, practices, or the existence of significant racially disproportionate conduct. *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095. While intentional discrimination may be inferred from circumstantial evidence, there must be cold hard facts presented from which the inference can be drawn that race or sex was a determining factor. *Harker v. Fed-*

---

for not selecting her to fill the position. *Patterson, supra.*

3. The possible marks in these evaluations were below standard, standard, above standard, and excellent.

*eral Land Bank of Louisville,* Ky., 679 S.W.2d 226 (1984).[4]

■ It is the third stage of the *McDonnell–Douglas* scheme which has proven most troublesome. Proof of intentional discrimination may take a variety of forms and our words are not to be interpreted so as to mandate the manner in which a plaintiff may seek to prove that the employer's stated reasons are pretextual.[5] Moreover, we are prevented from disturbing the Commission's findings and conclusions unless they are clearly erroneous. KRS 344.240; *Kentucky Commission on Human Rights v. Fraser,* Ky., 625 S.W.2d 852 (1981). However, after careful review of the record, we are unable to find any evidence that Ms. Handley was the victim of racial or sexual discrimination. The crux of the defense is, that while Ms. Handley was qualified for the position, Mr. Craven was objectively better qualified and Mr. Metcalf's superior personal attributes rendered him more suitable for the position than Ms. Handley. Although as the Commission noted, the Center had a policy to hire from within, and Handley had been appointed to the position on a temporary basis, there is simply no evidence that the reason for refusing to promote her was based on racial or sexual considerations. Her work record revealed that she had, on occasion, been tardy[6] and her "average" attitude and attendance predated the incidents now in question. Ms. Stilmack testified that while working as interim assistant manager Ms. Handley had misassigned handicapped seating, and that she had received complaints from customers concerning Handley's unavailability.

Conversely, Ms. Handley produced no evidence to substantiate her claim. Indeed, when asked if she had anything, other than her belief that she should have gotten the job, to substantiate or support her claim of discrimination, she responded "no." It was not Handley's belief which was relevant, nor, was it the Commission's role to determine which candidate should have gotten the job; rather, it was the Center's motive that was at issue. *Burdine, supra.,* 450 U.S. at 259, 101 S.Ct. at 1096. Handley failed to prove that discriminatory intent was the Center's motivation for not promoting her.

■ Ms. Handley also claims that she was denied the position a second time in retaliation for filing the initial claim. The *McDonnell–Douglas* scheme is, in a modified version, applicable to retaliation claims. The plaintiff, in making out a *prima facie* case, must show that 1) she engaged in a protected activity, 2) she was disadvantaged by an act of her employer, and 3) there was a causal connection between the activity engaged in and the employer's act. Again, if the employer articulates a legitimate, non-retaliatory reason for the decision, the employee must show that "but for" the protected activity, the adverse action would not have occurred. *De Anda v. St. Joseph Hospital,* 671 F.2d 850 (5th Cir.1982).

■ Just as we can find no evidence of the Center's intent to discriminate, we are unable to find any evidence that Ms. Handley was not promoted because she filed a discrimination action. The Center articulated legitimate business reasons why Ms.

---

4. *Harker, supra,* was an age discrimination case but its proof requirements are equally applicable to allegations of race and sex discrimination.

5. An employee may prove intentional discrimination by a variety of means. For instance, she may show that there has been a general attitude of discrimination throughout the employment climate. She could use statistics to show that minorities are infrequently or never hired at her place of employment. She could also show—by objective and subjective standards—that she was better qualified for the position, yet, was rejected.

6. There was, during the hearing, much discussion as to whether Handley was actually tardy. Although her record indicates that she was tardy on occasion, she did not receive a "tardy notice" until after she filed her first complaint with the Commission. However, Ms. Stilmack testified that this was because in approximately October, 1985, tardiness became a problem among the employees and the Center decided to enforce its tardiness policy. Other employees, besides Handley, received tardy notices.

Handley was not given the position which were unrefuted by her.

In summary, there was no evidence that Ms. Handley was a victim of discrimination when she first applied for the position of assistant manager, nor was she a victim of retaliation when she was rejected the second time. The trier of fact must be able to find some articulable fact which either directly proves an intent to discriminate or retaliate, or from which such inferences can reasonably be drawn. No such facts are present here.

Based on the foregoing, the opinion of the Jefferson Circuit Court affirming the decision of the Commission is reversed.

All concur.