KENTUCKY DEPARTMENT OF COR-
RECTIONS and Dewey Sowders,
Appellants/Cross–Appellees,

v.

Patricia McCULLOUGH,
Appellee/Cross–
Appellant.

Nos. 2000–SC–0727–DG,
2001–SC–0146–DG.

Supreme Court of Kentucky.

Aug. 21, 2003.

As Modified on Denial of Rehearing and
Grant of Modification Jan. 22, 2004.

Stephen P. Durham, Department of Corrections, Office of General Counsel, Mark A. Sipek, Personnel Board, Frankfort, Counsel for Appellants/Cross–Appellees.

William R. Erwin, Helton, Erwin and Sanders, Danville, Counsel for Appellee/Cross–Appellant.

Deborah T. Eversole, General Counsel, Public Service Commission, Karen Quinn, Deputy General Counsel, Justice Cabinet, Frankfort, Counsel for Amicus Curiae, Governor's Executive Cabinet.

Opinion of the Court by Justice JOHNSTONE.

Appellee and Cross–Appellant, Patricia McCullough, brought suit against Appellants and Cross–Appellees, the Kentucky Department of Corrections and Warden Dewey Sowders, alleging gender discrimination and unlawful retaliation in violation of the Kentucky Civil Rights Act ("KCRA"). The jury found for Appellants on McCullough's gender-discrimination claim and found for McCullough on her unlawful-retaliation claim. Appellants appealed and McCullough cross-appealed. The Court of Appeals affirmed in part, vacated in part and remanded with instructions. On discretionary review, both sides raise a number of interesting and important issues, including whether McCullough established a *prima facie* case of retaliation and whether punitive damages are available under the KCRA. For the reasons set forth below, we affirm in part and reverse in part.

## I. *Facts and Procedural History*

McCullough is employed as a correctional officer at the Northpoint Training Center (Northpoint). On January 29, 1987, she filed an Equal Employment Opportunity ("EEO") complaint with the Department of Corrections. In the complaint, she alleged that she had been sexually harassed by Lt. W.W. Gribbins, who was her superior officer at the time. McCullough alleged that after she volunteered to work in a dormitory unit, Lt. Gribbins told

her that women were not allowed to work in dormitory units and then made inappropriate comments of a sexual nature. As a result of the complaint, Lt. Gribbins made a formal, written apology and was voluntarily demoted to the rank of sergeant. Further, prison policy was changed to permit women to work in dormitory units. McCullough was the first person to benefit from this policy change when she was allowed to take on the work assignment for which she had volunteered.

Between filing the EEO complaint in January 1987 and filing the underlying lawsuit against Appellants in August 1995, McCullough applied for promotion to the rank of sergeant twenty-four times and applied for promotion to the rank of unit administrator twice. She was passed over for promotion all twenty-six times. After withdrawing her name from consideration for promotion for the twenty-seventh time, she filed suit alleging gender discrimination and unlawful retaliation in violation of the KCRA.

McCullough's case proceeded to trial. The jury found against her on the gender-discrimination claim, for her on the retaliation claim and awarded her $120,000.00 in compensatory damages and $120,000.00 in punitive damages. In response to post-trial motions by both parties, the trial court set aside the punitive damages award, awarded McCullough $50,000.00 in attorneys' fees, and ordered Appellants to pay her court costs and interest on the judgment as provided by law. Additionally, the trial court granted McCullough's request for injunctive relief by ordering Appellants to promote her to the rank of sergeant.

Appellants appealed and McCullough cross-appealed. The Court of Appeals affirmed the award for compensatory damages and costs, vacated the award for interest and attorneys' fees, and vacated that portion of the trial court's order setting aside the punitive damages award. Additionally, the Court of Appeals vacated the trial court's order denying McCullough an instruction on punitive damages against Warden Dewey Sowders and remanded the case to the trial court to reconsider attorneys' fees and to allow McCullough to pursue her claim for punitive damages against Sowders.

We accepted discretionary review in part to address the question of whether KRS 344.450 provides for an award of punitive damages. Additional arguments concern whether the trial court erred in denying Appellants' motion for a directed verdict, whether the trial court erred in ordering post-judgment interest and whether McCullough was entitled to a missing evidence instruction. Upon careful review, we affirm the Court of Appeals' holding that Appellants were not entitled to a directed verdict and affirm its holding that post-judgment interest cannot be assessed against the Commonwealth under the KCRA. We reverse its holding that punitive damages are available under the KCRA. Finally, we dismiss as moot its holding that McCullough was not entitled to a missing evidence instruction.

## II. *Discussion*

### A. Directed Verdict: Retaliation

KRS 344.280(1) makes it unlawful for a person:

> To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under this chapter.

 A claim for unlawful retaliation requires the plaintiff to first establish a

*prima facie* case of retaliation, which consists of showing that "(1) she engaged in a protected activity, (2) she was disadvantaged by an act of her employer, and (3) there was a causal connection between the activity engaged in and the [defendant] employer's act." *Kentucky Center for the Arts v. Handley,* Ky.App., 827 S.W.2d 697, 701 (1991), *citing De Anda v. St. Joseph Hospital,* 671 F.2d 850, 856 (1982). In a case where there is no direct evidence of retaliation, as is the case here, the burden of production and persuasion follows the familiar *McDonnell Douglas* framework. Under this framework, after the plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to show a non-retaliatory reason for the adverse employment decision that disadvantaged the plaintiff. *Id.* After the defendant has met this burden, "the *McDonnell Douglas* framework is no longer relevant." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407, 418 (1993). This is because "the *McDonnell Douglas* presumption is a *procedural* device, designed only to establish an order of proof and production." *Id.* at 521, 113 S.Ct. at 2755, 125 L.Ed.2d. at 425 (emphasis in original). At this point, the case then proceeds with the plaintiff having to meet her initial burden of persuading the trier of fact by a preponderance of the evidence that the defendant unlawfully retaliated against her. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105, 117 (2000).

■ To meet her burden of persuasion, the plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation]." *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106, 147 L.Ed.2d. at 117. Proof that the defendant's non-retaliatory reasons are "unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.* at 147, 120 S.Ct. at 2108, 147 L.Ed.2d at 119–20. Consequently, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the defendant's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated against the plaintiff]." *Id.* at 148, 120 S.Ct. at 2109, 147 L.Ed.2d at 120. In other words, a plaintiff's *prima facie* case plus proof of a pretext may constitute sufficient evidence to survive a motion for a directed verdict.

■ On appellate review, when determining whether the trial court erred in denying a motion for directed verdict, the non-moving party's evidence is taken as true and the non-moving party is entitled to all reasonable inferences that may be made from the evidence. *Lewis v. Bledsoe Surface Mining,* Ky., 798 S.W.2d 459, 461 (1990). When viewed in this light, McCullough's *prima facie* case of retaliation plus her proof of pretext were sufficient to survive Appellants' motion for a directed verdict.

### *Prima Facie Case*

The Court of Appeals held that McCullough met her burden of proving a *prima facie* case of retaliation by showing that (1) she engaged in a protected activity by filing an EEO complaint, (2) she was subjected to adverse treatment when she was denied promotion, and (3) she was denied promotion because she filed an EEO complaint. The first two elements are relatively easy to establish. Filing an EEO complaint is a protected activity. *Clark County School District v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509, 515 (2001). Next, failure to

be promoted can be adverse treatment. *Hale v. Cuyahoga County Welfare Department*, 891 F.2d 604, 606 (6th Cir.1989). In order to establish adverse treatment based on failure to promote in a retaliation case, the plaintiff must demonstrate that (1) she applied for promotion after engaging in a protected activity and was qualified for the promotion, (2) she was considered for and denied the promotion, and (3) other employees of similar or lesser qualifications received promotions at the time the plaintiff's request for promotion was denied. *Cf. Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir.1982) (setting forth the elements of failure to promote in the context of a *prima facie* case of racial discrimination). But the issue of whether McCullough established a causal connection between the two is not so easily established.

■■■ A causal connection can be established through either direct or circumstantial evidence. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). "Direct evidence is evidence, which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir.2001). Typically, this type of smoking-gun evidence will consist of written or oral statements, most likely made by the decision-maker responsible for the adverse action against the plaintiff. *See, e.g., Rubinstein v. Administrators of the Tulane Educational Fund*, 218 F.3d 392, 402 (5th Cir.2000), *cert. denied*, 532 U.S. 937, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001). Like most retaliation cases, there is no direct evidence of retaliation here and, therefore, proof of a causal connection must be made through circumstantial evidence.

■■■ Circumstantial evidence of a causal connection is "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Nguyen*, 229 F.3d at 565. In most cases, this requires proof that (1) the decision-maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action. *See, e.g., Breeden*, 532 U.S. at 273, 121 S.Ct. at 1508, 149 L.Ed.2d at 515. But a close temporal proximity alone may be sufficient to raise the inference. *Nguyen*, 229 F.3d at 567 (leaving the possibility open). Further, a plaintiff may be able to raise a causal-connection inference by demonstrating that the adverse action was taken shortly after engaging in a protected activity and that she was treated differently from other employees. *See, e.g., Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1079 (6th Cir.1999). (Plaintiff was subjected to more frequent disciplinary writeups for trivial matters and unwarranted criticism of plaintiff's work after plaintiff filed an EEOC complaint alleging a racially hostile work environment.) In all these cases, temporal proximity is an important element of proof. The reason for this is fairly self-evident. "The sooner adverse action is taken after the protected activity, the stronger the implication that the protected activity caused the adverse action, particularly if no legitimate reason for the adverse action is evident." Justin P. O'Brien, *Weighing Temporal Proximity in Title VII Retaliation Claims*, 43 B.C. L.Rev. 741, 749 (May, 2002).

Here, the question of temporal proximity is somewhat confusing because this case concerns a series of twenty-six adverse actions (non-promotions) occurring over an eight-and-a-half year period. Further complicating the situation is the fact that nine of these non-promotions occurred outside the applicable statute of limitations.

The trial court admitted these nine non-promotions to show a pattern and practice of retaliation.

The first time McCullough was passed over for promotion *within the statute of limitations* was March 25, 1991. This was more than four years after she filed the EEO complaint. Under *Breeden*, this failure to promote, isolated by itself, was too far removed in time to support an inference of causality based on temporal proximity. *Breeden*, 532 U.S. at 274, 121 S.Ct. at 1511, 149 L.Ed.2d at 515. But *Breeden* and the other cases addressing the importance of temporal proximity upon which it relies, concern one or at most two adverse employment actions. In this case, we have evidence of a repeated series of adverse employment actions occurring both before and after the first actionable adverse action. This distinction is of critical importance.

■ McCullough was passed over for promotion three days after she filed the EEO complaint. She was again denied promotion later the same year. After returning from a maternity leave of absence, she was again passed over for promotion about a year later. Six months later, she was again passed over for promotion. In fact, the evidence established that applying for and being denied promotion were roughly bi-yearly events for McCullough until she finally determined that the effort was futile and declined to be considered for further promotions. Viewed in the light most favorable to McCullough, this evidence established a pattern and practice of adverse treatment, which began shortly after she filed the EEO complaint. Further, the particular circumstances of this case established an inference that McCullough was treated differently than other employees during the promotion process.

Northpoint is part of the Department of Corrections, a state agency, and as such, it is not free to make arbitrary promotion decisions for merit positions. Rather, it is subject to various regulations as to the promotion of merit employees. One of these is 101 KAR 1:400(1), which states that "[a]gencies shall consider an applicant's qualifications, record of performance, conduct, seniority and performance evaluations in the selection of an employee for a promotion." Thus, Northpoint was required to consider and give weight to these factors when making promotion decisions and there was testimony that this was so. Much of McCullough's case consisted of evidence of her qualifications for promotion under these regulatory factors. This evidence consisted of a personnel letter that she met the minimum qualifications for sergeant; a number of special commendations and awards that she had received in connection with her employment, including an award for assisting in quelling a prison riot and a merit salary increase for outstanding job performance; her bi-yearly job performance evaluations, for which she generally received the highest rating of exceeds expectations; a clean criminal record; and an absence of reprimands, demotions and suspensions. On the other hand, the only evidence Appellants offered to show that McCullough was not qualified for promotion was that she was nervous during her interviews and not always direct.

Using the regulatory factors as a benchmark, McCullough also introduced evidence that she was as qualified or more qualified than each person promoted over her. Most of this evidence consisted of documentary evidence establishing her experience and seniority relative to each person promoted over her. In all cases, she presented proof that she had at least as much seniority as the person promoted over her and in many cases much more. One instance showed a difference of ten-

and-a-half years. Additionally, she introduced evidence that one of the candidates promoted over her had a prior felony conviction and that another had been reprimanded. Finally, she testified to her personal beliefs as to why she believed that she was the better candidate.

Appellants' evidence of why McCullough was repeatedly denied promotion consisted of testimony by some of the panelists who sat on the various three-person interview panels that interviewed both McCullough and the person eventually promoted over her. In every instance, each panelist's testimony concerning the person promoted over McCullough, consisted solely of the panelist's subjective beliefs as to why the person promoted was better qualified than McCullough. These reasons included better leadership and · inmate-management skills, military experience, the ability to take charge and the respect of fellow employees. But, Appellants offered no evidence that cast doubt on McCullough's qualifications for promotion other than the testimony that she did not interview well.

While not overwhelming, the above evidence was circumstantial evidence that the regulatory factors were weighed differently or not at all in McCullough's case. She was recommended for promotion only once out of twenty-six attempts, while candidates with equal or lesser qualifications (under the regulatory factors to be considered and weighed) were recommended and promoted over her. It was evidence of disparate treatment. Because this disparate treatment began soon after she filed the EEO complaint, we hold that McCullough established an inference that there was a causal connection between the protected activity of filing the EEO complaint and the adverse employment action of failing to be promoted. *See Moore*, 171 F.3d at 1079. In other words, McCullough proved a *prima facie* case of retaliation.

Under *Reeves, supra,* this is half of the battle. Proof of pretext is the other.

### Pretext

■■■ McCullough's proof of pretext was basically the same as her proof of disparate treatment. That is, she established that she was well qualified for each promotion according to the regulatory factors that Northpoint was required to consider and give weight to when making promotion decisions for merit positions. Further, using these factors as a measuring stick, she established that she was as qualified or more qualified than each person promoted over her. On the other hand, while Appellants' reasons for not promoting McCullough in each instance were plausible, they were not compelling. Further, each time she applied for a promotion, she increasingly had more seniority and experience relative to the candidates promoted over her. But Appellants' reasons for not promoting her remained basically the same.

From this evidence, the jury could have and did infer that Appellants' non-retaliatory reasons for not promoting McCullough were pretextual. After considering the evidence of pretext in conjunction with McCullough's *prima facie* case, we cannot say that the jury's verdict was "palpably or flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice." *NCAA v. Hornung*, Ky., 754 S.W.2d 855, 860 (1988) (internal quotation marks omitted). Therefore, we hold that the trial court did not err in denying Appellants' motion for a directed verdict.

### B. Punitive Damages

■■■ KRS 344.450 provides:

Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations,

and to recover the actual damages sustained, together with the costs of the law suit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.

"Actual damages" are compensatory in nature and, as such, do not include punitive damages. 22 Am.Jur.2d *Damages* § 24; *Horton v. Union Light, Heat & Power Co.*, Ky., 690 S.W.2d 382, 388 (1985) ("The concept of permitting punitive damages *in addition to* compensatory damages is one of longstanding in Kentucky."). (Emphasis added.) Despite the plain language of the statute, the Court of Appeals held that punitive damages are nonetheless available under KRS 344.450. In so holding, it reasoned that allowing punitive damages under the KCRA was consistent with the Act's stated purpose to "provide for execution within the state of the policies embodied in the Federal ... Civil Rights Act of 1991...." KRS 344.020(1). The Court of Appeals further reasoned that KRS 411.184 and KRS 411.186 make punitive damages available in all actions except breach-of-contract actions. We disagree with these conclusions and hold that punitive damages are not available under KRS 344.450.

### Purpose

In keeping with the KCRA's stated purpose to effectuate the policies of federal civil rights laws within the Commonwealth, Kentucky courts have always construed violations under the KCRA consistent with federal construction of similar violations under the federal civil rights laws. *Meyers v. Chapman Printing Co., Inc.*, Ky.,

840 S.W.2d 814, 817 (1992). But we have taken a different approach to damages because (1) the statutory remedies under the KCRA are markedly different from those available under the federal discrimination laws, and (2) the KCRA includes a stated purpose not found in the federal civil rights laws to "protect ... personal dignity and freedom from humiliation." *Id.*, quoting KRS 344.020(1)(b). As a result of these differences, damages available for employment-discrimination claims [1] under the KCRA were distinctly much broader than those available under the federal laws prior to the enactment of the 1991 Federal Civil Rights Act. *Id.* at 816.

Prior to the enactment of the 1991 Federal Civil Rights Act "only equitable relief, primarily backpay, was available to prevailing Title VII [of the federal Civil Rights Act of 1964] plaintiffs; the statute provided no authority for an award of punitive or compensatory damages." *Kolstad v. American Dental Association*, 527 U.S. 526, 533–34, 119 S.Ct. 2118, 2123–24, 144 L.Ed.2d 494, 504 (1999). On the other hand, the KCRA provided for the right to "recover actual damages sustained," which have been defined as "all those damages directly and naturally resulting, in the ordinary course of events, from the injury in question." *Mitchell v. Seaboard System R.R.*, 883 F.2d 451, 453 (6th Cir.1989), quoting *Nelson v. Tobacco States Chemical Co.*, 85–CI–608, at 3 (Fayette Cir. Ct. Aug. 1986). Thus, under the KCRA a plaintiff was (and still is) entitled to recover compensatory damages as well as other incidental damages such as "additional mileage and meal expenses" incurred as a direct result of a defendant's discriminatory actions. *Id.* These damages clearly

---

**1.** *Meyers* limited its discussion to the differences between remedies available under the KCRA and those available under Title VII of the 1964 Civil Rights Act, which addresses

employment discrimination on the basis of "race, color, religion, sex, or national origin." *Meyers*, 840 S.W.2d at 817.

were not available under the pre–1991 federal employment-discrimination laws. *Id.* at 452.

"In the Civil Rights Act of 1991, Congress expanded the remedies available to [victims of employment discrimination] by permitting, for the first time, the recovery of compensatory and punitive damages." *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 848, 121 S.Ct. 1946, 1949, 150 L.Ed.2d 62, 67 (2001). This legislation also marked, for the first time, the availability of arguably broader remedies under federal law for victims of employment discrimination than available under Kentucky law.[2] In light of this change, the Court of Appeals abandoned our approach in *Meyers* of construing the remedies available under KRS 344.450 consistent with the plain meaning of "actual damages sustained" and adopted a policy-oriented approach that weds the remedies available under the KCRA to those available under the federal employment-discrimination laws. We reject this approach and reaffirm our approach to the construction of remedies under the KCRA as stated in *Meyers.*

### Punitive Damages Statutes

In enacting KRS 411.184 and KRS 411.186, the General Assembly intended to preempt the common law on punitive damages and to occupy the field. It said as much in KRS 411.184(5): "This statute is applicable to all cases in which punitive damages are sought and supersedes any and all existing statutory or judicial law insofar as such law is inconsistent with the provisions of this statute." The Court of

Appeals construed this and similar language found in KRS 411.186 as authorizing punitive damages in all cases in which the statutory elements of fraud, oppression or malice were present. But the more likely interpretation of this language is that the statutes apply only to those cases in which punitive damages are already authorized by common law or by statute. This construction flows from the nature of the two statutes themselves, which established procedures and guidelines for awarding punitive damages in civil actions.

KRS 411.184(1)(f) defines "punitive damages." KRS 411.184(2) sets forth the type of conduct—fraud, oppression or malice—that may be subject to punitive damages and the standard of proof for proving punitive damages. KRS 411.184(1)(a)–(c) defines fraud, oppression and malice. KRS 411.186(1) states that the issue of punitive damages shall be determined "concurrently with all other issues presented," *i.e.,* punitive damages are not to be bifurcated from the issues of liability and compensatory damages. Finally, KRS 411.186(2) sets out the factors that the trier of fact should consider if it determines that punitive damages may be assessed in a case. The provisions of these statutes provide clear guidelines for the awarding and assessment of punitive damages. There is nothing to indicate that the General Assembly intended to expand the availability of punitive damages in enacting these statutes. In fact, the General Assembly's statutory treatment of punitive damages since the enactment of KRS 411.184 and KRS 411.186 indicates a contrary intent.

---

**2.** We use the term "arguably" because of the caps the 1991 Federal Civil Rights Act places on both compensatory and punitive damages. These caps range from $50,000 against an employer who employs between 14 and 100 employees to $300,000 against an employer who employs more than 500 employees. *See*

42 U.S.C. § 1981a(3). The KCRA does not have any cap on the amount of "actual damages" that can be awarded. Thus, in many cases an employer's potential liability is greater under the KCRA without punitive damages than it is under the Federal Civil Rights Act with punitive damages.

Since enacting these two statutes, the General Assembly has enacted a number of statutes that expressly provide for punitive damages as a remedy for violation of the statute. In fact, two of these, which were enacted in 1992, fall within the KCRA: KRS 344.660 and KRS 344.665, both of which provide for both actual and punitive damages for discriminatory housing practices. The express inclusion of punitive damages in these statutes is redundant and unnecessary if KRS 411.184 and KRS 411.186 created the right to punitive damages in all cases where the statutory elements for punitive damages are present. Such a result violates the "universal rule ... that in construing statutes it must be presumed that the Legislature intended *something* by what it attempted to do." *Reyes v. Hardin County*, Ky., 55 S.W.3d 337, 342 (2001) (emphasis in original). Therefore, we hold that KRS 411.184 and KRS 411.186 do not make punitive damages available under KRS 344.450.

## C. Interest

The trial court ordered that the judgments against Appellants should bear post-judgment interest. The Court of Appeals concluded that this award was in error because the KCRA does not specifically provide for interest and, thus, the order cannot be enforced against the Commonwealth, its agencies or officers. On cross-appeal, McCullough argues that the Court of Appeals got this issue wrong. We disagree.

State agencies are not liable for interest "unless there is statutory authority or a contractual provision authorizing the payment of interest." *Powell v. Board of Education of Harrodsburg*, Ky. App., 829 S.W.2d 940, 941 (1992). Moreover, because of sovereign immunity principles, "a statute waiving immunity must be strictly construed and cannot be read to encompass the allowance of interest unless

so specified." *Id.* While the KCRA specifically provides that a plaintiff may recover costs, it makes no provision for interest. Therefore, we hold that interest may not be awarded against the Commonwealth or its agencies in connection with a judgment obtained under the KCRA. Likewise, interest may not be awarded against Warden Sowders because judgment was rendered against him in his official capacity. *See Yanero v. Davis*, Ky., 65 S.W.3d 510, 522 (2001).

## D. Other Issues

The Court of Appeals held that McCullough could maintain a claim against Warden Sowders for punitive damages and remanded the case for a trial on that claim. Appellants' appeal that holding. But our holding that punitive damages are not available under the KCRA makes this issue moot. Our holding also renders moot McCullough's argument that she is entitled to a missing evidence instruction at retrial on the issue of punitive damages against Sowders. Finally, we briefly address an issue decided by the Court of Appeals, but not raised on appeal to this Court by either party.

The Court of Appeals held that the trial court erred in awarding attorneys' fees without proper findings to justify the award given. Because this holding is not raised on appeal or cross-appeal, we will not discuss it on the merits. We mention this only to clarify why the case is being remanded for reconsideration of attorneys' fees.

## III. Conclusion

We affirm the Court of Appeals' holding that the trial court correctly denied Appellants' motion for a directed verdict and affirm its holding that post-judgment interest cannot be awarded against the Commonwealth under the KCRA. We reverse

the Court of Appeals' holding that punitive damages are available under the KCRA. We remand this case to the trial court with instructions to vacate that part of its order allowing post-judgment interest and with instructions to reconsider its award of attorneys' fees in light of the standard set forth in *Meyers v. Chapman Printing Co., Inc.*, Ky., 840 S.W.2d 814, 826 (1992).

LAMBERT, C.J., and WINTERSHEIMER, J., concur.

COOPER, J., concurs by separate opinion, with GRAVES, J., joining that concurring opinion.

KELLER, J., concurs by separate opinion.

STUMBO, J., dissents by separate opinion.

Concurring by Justice COOPER.

Despite my continuing belief that *Department of Corrections v. Furr*, Ky., 23 S.W.3d 615 (2000), was wrongly decided, four Justices (including one who joined my dissent in *Furr*) have reaffirmed it today, albeit *sub silentio*. Accordingly, and mindful of *stare decisis,* I join the opinion of the Court, primarily to ensure that the punitive damages analysis receives a majority vote. I do so, however, with the hope that in due time a majority of the Court will recognize and correct the error made in *Furr. See Scott v. Illinois,* 440 U.S. 367, 374–75, 99 S.Ct. 1158, 1162–63, 59 L.Ed.2d 383 (1979) (Powell, J., concurring).

GRAVES, J., joins this concurring opinion.

1. Ky., 23 S.W.3d 615 (2000).

2. Ky., 96 S.W.3d 13 (2003).

Concurring by Justice KELLER.

I concur in the majority opinion because I agree with its analysis of the issues presented in this case. I write separately, however, to reiterate that, in my view, McCullough should not have been permitted to recover *any* damages from the Kentucky Department of Corrections ("KDOC"). I joined Justice Cooper's dissenting opinion in *Department of Corrections v. Furr* [1] ("*Furr*") because I believed then—as I believe now—that the Commonwealth's agencies cannot be sued for money damages under the Kentucky Civil Rights Act ("KCRA") because the General Assembly has not "specifically and expressly" waived their immunity from suit. In *Jones v. Crittenden,* [2] I temporarily set aside my views regarding sovereign immunity and the KCRA and expressed my opinion on the merits of that case in light of the existing *Furr* precedent. [3] I now realize, however, that, when the issue we addressed in *Furr* is again before this Court, I cannot fulfill my oath of office if I disregard my conclusion that a damage recovery is barred by sovereign immunity. I was mistaken to do so in *Jones v. Crittenden.* In this case, the KDOC argued before the Court of Appeals (and prior to *Furr*'s rendition) that McCullough could not recover damages against it under the KCRA. But, in its appeal to this Court, the KDOC has apparently abandoned this issue—it raises no challenge to the holding in *Furr,* and no longer argues that it is immune from a damage award. Thus, although, I *would* vote, in accordance with my vote in *Furr,* to vacate McCullough's compensatory damage award against the KDOC, I cannot do so. As to the issues that are properly before the Court, I agree

3. *Id.* at 24 (Keller, J., dissenting).

with the analysis in the majority opinion, and thus I concur in the majority.

Dissenting by Justice STUMBO.

Respectfully, I must dissent from Section B of the majority opinion. KRS 411.184(5), the punitive damages statute, states, "[t]his statute is applicable to all cases in which punitive damages are sought and supersedes any and all existing statutory or judicial law insofar as such law is inconsistent with the provisions of this statute." Appellee met the standard of KRS 411.184(5) because she sought punitive damages. By applying the plain, commonly-accepted meaning of "supersede" which according to Webster's New International Dictionary 2295 (3d ed. 1993) is, "to be superior to," KRS 411.184(5) is superior to any inconsistent statute.

Next, we need to consider whether Appellee met the oppression requirement necessary to access punitive damages as established in *Hill v. Marshall*, 962 F.2d 1209 (6th Cir.1992). The court in *Hill* held that a person has been oppressed when one is intentionally retaliated against for exercising his or her civil rights. Appellee successfully demonstrated to the jury that she was repeatedly denied a promotion because she filed an EEO complaint and that the basis for denial was retaliatory behavior that resulted in oppression. The jury and the Court of Appeals found that Appellee was entitled to punitive damages. I agree.

Further, I concur with the Court of Appeals' interpretation that the phrase "any other remedies," provided in KRS 344.450, includes punitive damages.

Appellants have argued that when the General Assembly wants to provide punitive damages, it does. I agree. As provided in KRS 446.015, rules of construction direct the application of the plain, commonly-accepted meaning to the language.

The statute designated by the legislature to address punitive damages is KRS 411.184(5). Additionally, by enacting a statute that clearly defines itself as being superior to any conflicting statute, the legislature has eliminated any question about which statute to apply.

I agree with the analysis and holding of the Court of Appeals in that, "If McCullough can maintain an action against Sowders under KRS Chapter 344, she can seek recovery of the whole panoply of damages to which she is entitled by law including punitive damages."

I would affirm the decision of the Court of Appeals as to both the Department of Corrections and Warden Sowders.