**Robert MARANGO, Appellant**

**v.**

**KENTUCKY RETIREMENT SYSTEMS and Board of Trustees of Kentucky Retirement Systems, Appellees**

**NO. 2016-CA-001056-MR**

Court of Appeals of Kentucky.

OCTOBER 13, 2017; 10:00 A.M.

BRIEFS FOR APPELLANT: Kirk Hoskins, Louisville, Kentucky.

BRIEF FOR APPELLEE: Katherine Rupinen, Frankfort, Kentucky.

BEFORE: J. LAMBERT, STUMBO, AND TAYLOR, JUDGES.

OPINION

LAMBERT, J., JUDGE:

Robert Marango appeals from the Franklin Circuit Court order denying his request for interest on the judgment awarded to him for an improper reduction in his retirement benefits. We affirm.

The factual and procedural history of Marango's conflict with the Kentucky Retirement Systems is best summed up by this Court in Marango's first appeal:

Marango was a hazardous member of the Kentucky Employees Retirement

System (KERS), administered by KRS pursuant to his employment with the Department of Fish and Wildlife Resources. While employed, Marango filed an action in Meade Circuit Court against his employer for failure to pay him overtime during fiscal years 1998–1999 through 2003–2004. Prior to trial, the parties entered into a negotiated settlement agreement, which was memorialized through a court order entered on July 8, 2008.

The order specified the Department of Fish and Wildlife would pay $40,000 to Marango through two $20,000 payments, which would "be treated as unpaid overtime compensation subject to applicable state and federal withholdings [.]" The Commonwealth of Kentucky was ordered to credit the first $20,000 payment "as though made in the fiscal year ending June 30, 2008[,] for purposes of retirement calculation." The remaining $20,000 was to be paid within twenty days of Marango's resignation, so long as he retired by August 1, 2009, as required by the settlement agreement.

Both parties abided by the terms of the settlement agreement. The Department of Fish and Wildlife Resources paid Marango his regular salary and lump sum payments through regular payroll in 2008 and 2009. During the time Marango received both his salary and a lump sum payment, the Department of Fish and Wildlife Resources reported to KRS the total amount paid to Marango each payroll period as part of Marango's creditable compensation earned during that month in accordance with the then current 105 KAR [Kentucky Administrative Regulation] 1:140 § 1(1) (2009). The Department of Fish and Wildlife Resources treated these payments as creditable compensation by deducting Marango's employment contributions for retirement from these

payments as required by KRS [Kentucky Revised Statute] 61.543(1) and KRS 61.560(2). It also reported these payments as wages on Marango's 2008 and 2009 W–2 forms.

Pursuant to KRS 61.510(14)(c), as a hazardous member of KERS, Marango's final compensation was calculated based on his three highest paid years of service. Because the Department of Fish and Wildlife Resources reported the lump sum payments to KRS when paid, two of Marango's highest years were the years in which he received the lump sum payments.

Initially, KRS advised Marango the lump sum payments would be included in the calculation of his compensation for the final three years of employment. Marango began receiving retirement benefits accordingly. Later, KRS decided the payments should be treated as severance/lump sum bonus payments which would be creditable compensation averaged over Marango's total years of qualifying service pursuant to KRS 61.510(13).

Marango sought to clarify that the Meade Circuit Court order entering the negotiated settlement agreement was awarding him back pay and moved for CR 60.02(f) relief. In granting this relief, the Meade Circuit Court clarified and amended its settlement order to specify the payments were compensation for unpaid overtime and not severance pay or a lump sum bonus, and were wages reportable as earnings to Marango for years 2008 and 2009.

KRS ultimately reclassified the payments as "unpaid overtime" then calculated the percentage of unpaid overtime compensation claimed for each calendar year and applied those percentages to the monies actually received to determine "Marango's creditable compensa-

tion for the fiscal years 1998–1999 through 2003–2004[.]" Recalculating Marango's creditable compensation from the lump sum payments to credit them when earned rather than paid resulted in Marango's receiving a substantially reduced monthly retirement payment.

Marango requested an administrative hearing on how the payments should be calculated and continued to insist the payments be considered creditable compensation when paid. Following an administrative hearing, the hearing officer issued a recommended order in favor of the KRS decision to attribute the payments to the years they were earned, rather than paid. The hearing officer reasoned "[a]pplying the payments to the time period in which they [were] actually earned is consistent with the basis of the benefit formula of KRS 61.595 used to determine the member's monthly annuity payment" and "[a]pplying the money when actually earned ensures the formula established by the legislature is not skewed by a member or agency to artificially increase, or decrease, a member's retirement allowance." The hearing officer determined KRS met its burden of proving "assigning the two $20,000 payments to [Marango] as unpaid overtime compensation when they were earned by [Marango] between 1998 and 2004 instead of when they were paid in 2008 and 2009 was correct" and issue preclusion and estoppel did not apply.

Marango filed exceptions. The Board of Trustees adopted the hearing officer's recommended order as the final order of KRS.

Marango appealed to the Franklin Circuit Court, which affirmed the Board's final order, determining it was appropriate to afford KRS deference in interpreting 105 KAR 1:140 § 1(1) and (3) as counting creditable compensation

when earned. It determined that such an interpretation is consistent with the legislative intent of the General Assembly when enacting KRS 61.595 and the Meade Circuit Court's order was not binding on KRS. The Franklin Circuit Court further determined equitable estoppel was inapplicable, the subsequent amendment to 105 KAR 1:140 was irrelevant and there was no due process violation.

Marango's motion to alter, amend or vacate was denied and Marango timely appealed. The issues on appeal are as follows: (1) whether KRS has the authority to credit the payments over the period that the overtime was earned, rather than when it was paid; (2) whether the Meade Circuit Court's order governs how the payments are to be credited for purposes of retirement; and (3) whether KRS is equitably estopped from reducing Marango's monthly payment. Because we determine the first basis for relief is warranted, we do not reach Marango's other arguments.

*Marango v. Kentucky Ret. Sys.*, No. 2012-CA-002153-MR, 2014 WL 5314703, at *1-2 (Ky. App. Oct. 17, 2014) (footnote omitted). The Court of Appeals went on to hold thus: "Because KRS 61.510 requires Marango's creditable compensation to be applied when paid, we reverse and remand to the Franklin Circuit Court for a judgment consistent with this Opinion." *Id.* at *4. The Kentucky Supreme Court (in No. 2014-SC-000680-D) denied the motion for discretionary review filed by the KERS on August 8, 2015, and the matter was returned to the Franklin Circuit Court thereafter.

On September 28, 2015, Marango moved the Franklin Circuit Court for entry of judgment. Marango's requested relief consisted of: The return to his original month-

ly benefit amount of $3,603.29; arrears totaling $45,252.00 (at that time); interest on the judgment at 8.62% (equaling $14,174.00); and $335.00 in costs and fees. The circuit court ordered that the matter be remanded to the KERS for calculations per the Court of Appeals opinion. However, after Marango filed a motion to reconsider, the circuit court (in February 2016) instead ordered the KERS to tender calculations.

A hearing was held in March of that year, and the circuit court entered an order (and later an amended order), granting Marango's requested benefit amount ("in addition to any applicable cost of living increases which have been granted since his benefit was previously reduced") and arrearages (by that time totaling $58,697.65 for past due "gross retirement" benefits) but denying interest and costs. The circuit court stated its reasons for denying interest and costs in its original order:

> [T]he Court declines to grant [Marango] further equitable relief in the form of additional monetary relief to cover the interest on the payments or for the court costs and fees associated with litigating these proceedings. Absent express authority for granting interest and waiving immunity, state agencies are not liable for interest. *Kentucky Department of Corrections v. McCullough,* 123 S.W.3d 130, 140 (Ky. 2003); *see also Powell v. Board of Education of Harrodsburg,* 829 S.W.2d 940, 941 (Ky. 1992). No such statutory authority exists in this case.

Marango appeals that portion of the circuit court order denying him interest on the arrearages. He argues that the KERS claimed on its website to have earned increases in the amount of 8.62% during the time period over which his arrearages accrued, and that he should benefit accordingly. He disagrees with the circuit court's rationale under *McCullough, supra,* and *Powell, supra,* citing in support of his position *University of Louisville v. RAM Engineering & Constr., Inc.,* 199 S.W.3d 746, 749 (Ky. App. 2005), which held that "[t]he General Assembly waived sovereign immunity for contract actions with the enactment of KRS 45A.245." Because his retirement is considered a contract,[1] Marango asserts that the waiver language in *RAM Engineering* should apply in the present matter.

We cannot agree with Marango's argument. "Since a state can be sued only with its consent, a statute waiving immunity must be strictly construed and cannot be read to encompass the allowance of interest unless so specified." *Powell, supra,* at 941. In *McCullough,* although the Kentucky Civil Rights Act (KCRA) allows for recovery of costs, the statute makes no specific mention of recovery of interest. "Therefore, we hold that interest may not be awarded against the Commonwealth or its agencies in connection with a judgment obtained under the KCRA." *McCullough, supra,* at 140.

Such is the case here. KRS 61.510 to 61.705 ("KERS") contains no such provision allowing for interest on judgments obtained against it. Although *RAM Engineering* allowed for recovery of interest in the contract dispute involved in its factual situation, that case was determined under the Kentucky Model Procurement Code (KMPC), KRS 45A.005 to 45A.990, which deals with the competitive bidding process in our Commonwealth. The KMPA is not applicable here.

---

1. *See Com. v. Kentucky Ret. Sys.,* 396 S.W.3d 833, 838 (Ky. 2013).

The order of the Franklin Circuit Court is affirmed.

ALL CONCUR.