RENDERED: FEBRUARY 18, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0064-DG

MICHAEL LEE BARNETT                                       APPELLANT


                    ON REVIEW FROM COURT OF APPEALS
V.                               NO. 2017-CA-1746
                  FAYETTE CIRCUIT COURT NO. 17-CI-02945


CENTRAL KENTUCKY HAULING, LLC.                         APPELLEE


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

The Kentucky Civil Rights Act[1] bars an employer from discharging an employee because of disability. We accepted discretionary review of this case to consider whether the KCRA similarly bars an employer from discharging an employee because of the disability of an individual with whom the employee associates. We conclude it does not. We affirm the decision of the Court of Appeals to affirm the trial court's order dismissing the KCRA complaint.

## I. FACTS AND PROCEDURAL HISTORY

Central Kentucky Hauling hired Michael Lee Barnett as a driver in 2011. Known to CKH at his hiring was the fact that Barnett's wife suffered from a debilitating respiratory disease, cystic fibrosis. In late 2013, the wife's

---

[1] Kentucky Revised Statutes (KRS) Chapter 344, the Kentucky Civil Rights Act (KCRA).

declining health required a double lung transplant, which she received in January 2014. Toward the end of that year, her health further declined.

Barnett took time off work to care for his wife. In early 2014, CKH supervisors confronted Barnett concerning a rumor that he was disparaging CKH to coworkers, a rumor Barnett denied. According to Barnett, during that confrontation a supervisor also mentioned his time off caring for his wife. At the end of 2014, CKH officially terminated Barnett's employment for lack of work, but Barnett also understood that one of his supervisors "wanted him gone."

Barnett sued CKH in the circuit court, alleging his firing violated the KCRA. He claimed that CKH discriminated against him for his association with his wife, an individual with a disability as defined by the KCRA. CKH responded by moving to dismiss Barnett's suit under Kentucky Rule of Civil Procedure (CR) 12.02(f) for failure to state a claim upon which relief can be granted. CKH argued that the KCRA does not create a cause of action for associational discrimination as Barnett alleged. And the trial court agreed with CKH's argument and dismissed the suit. The Court of Appeals affirmed the trial court's ruling and similarly found that the text of the KCRA does not support a cause of action for discrimination based on an employee's association with a disabled individual. For reasons explained below, we affirm the Court of Appeals.

## II. ANALYSIS

### A. We review de novo the trial court's dismissal under CR 12.02(f).

A defensive motion under CR 12.02(f) requires the trial court to consider as true the material facts alleged in the complaint and grant that motion only if satisfied that the plaintiff would not be entitled to relief under any set of facts that could be proved in support of the claim.[2]  The motion presents "a pure question of law," and appellate review is de novo.[3]  Our review of the present case centers on statutory construction, also a matter of de novo review, so we "look anew at this issue, respectfully considering the opinions of the lower courts but without deference."[4]

### B. The KCRA does not create a cause of action for associational discrimination.

The pertinent portion of the KCRA reads: "(1) It is an unlawful practice for an employer: (a) To . . . discharge any individual, or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because . . . the person is a qualified individual **with a disability**[.]"[5]  The KCRA defines disability as:  "(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as

---

[2] Kentucky Rules of Civil Procedure 12.02(f); *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010); *Morgan & Pottinger, Att'ys, P.S.C. v. Botts*, 348 S.W.3d 599, 601 (Ky. 2011) (overruled on other grounds by *Maggard v. Kinney*, 576 S.W.3d 559 (Ky. 2019)).

[3] *Grayson*, 317 S.W.3d at 7.

[4] *Lee v. Kentucky Dep't of Corr.*, 610 S.W.3d 254, 257 (Ky. 2020).

[5] KRS 344.040 (emphasis added).

having such an impairment."[6]  Additionally, the KCRA defines a "qualified

individual with a disability" as:

> "[A]n individual with a disability as defined in KRS 344.010 who,
> with or without reasonable accommodation, can perform the
> essential functions of the employment position that the individuals
> hold or desires unless an employer demonstrates that he is unable
> to reasonably accommodate an employee's or prospective
> employee's disability without undue hardship on the conduct of
> the employers' business."[7]

In interpreting what the quoted KCRA provisions mean when read

together, this Court must apply principles of statutory interpretation.  We must

first look to the plain language of the statute to "ascertain and give effect to the

intent of the General Assembly."[8]  Only if the language is unclear do we

consider the legislatures' unspoken intent, the statute's purpose, and the

broader statutory scheme.[9]

Barnett argues that the broad purpose of these statutes is to prevent

discrimination of those who are associated with disabled persons, such as his

---

[6] KRS 344.010(4). It is this language Barnett uses as the primary textual support for his argument.

[7] KRS 344.030(1).

[8] *Traveler's Indemnity Company v. Armstrong,* 565 S.W.3d 550, 558 (Ky. 2018). ("The fundamental rule in statutory interpretation is to give effect to the legislative intent." *Kentucky Indus. Utility Customers, Inc. v. Kentucky Utilities Co.,* 983 S.W.2d 493, 500 (Ky. 1998) (citing *Wesley v. Bd. of Educ. of Nicholas County,* 403 S.W.2d 28 (Ky. 1966)). We interpret statutes 'according to the plain meaning of the act and in accordance with the legislative intent.' *Pate v. Dept. of Corrections,* 466 S.W.3d 480, 488 (Ky. 2015) (quoting *Commonwealth v. Plowman,* 86 S.W.3d 47, 49 (Ky. 2002) (citing *Commonwealth v. Montaque,* 23 S.W.3d 629 (Ky. 2000))). KRS 446.080 also instructs that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]").

[9] *Grayson,* 317 S.W.3d 1 ("In addressing statutory interpretation, the Grayson Court first looked at the plan language of the text, legislative intent, then the purpose and history of the statute.").

4

wife in the present case. And he reads the KCRA's language "someone with an impairment" broadly enough to encompass persons who are associated with an individual with an actual impairment. But because statutes are not to be interpreted contrary to their stated language, we must disagree. As the Court of Appeals' opinion explained, when these provisions are all read together, the KCRA provides protection from discrimination for individuals with disabilities. Overall, the statute's plain language creates a special cause of action for those individuals who are regarded themselves as having an actual impairment. The statute provides first for those with a disability in KRS 344. 040. Then, KRS 344.010 lists three categories for determining who has a disability, one category being those regarded as having an impairment. Importantly, no language in the KCRA suggests an intent to protect those who are associated with disabled persons. To so find "would be to contravene the plain language of the KCRA," as the Court of Appeals opinion aptly concluded.

Barnett urges this Court to consider our recent decision in *Asbury University v. Powell*[10] as support for his contention that we should find a cause of action for associational discrimination despite the plain text of the statute. In *Powell*, we reviewed the issue of whether a retaliation claim under the KCRA requires an underlying violation of the law.[11] Powell alleged Asbury retaliated against her for reporting a mixed-motive theory of gender discrimination. The

---

[10] 486 S.W.3d 246 (Ky. 2016).

[11] *Id.* at 251–52.

KCRA does not recognize a mixed-motive theory of discrimination.[12]  Asbury argued Powell's claim must fail as a matter of law because the KCRA does not recognize the type of discrimination giving rise to the claimed retaliation.[13]

We held that Powell's retaliation claim survived.  We explained that Powell's claim was based on Asbury's "response to her complaints of gender discrimination" and that retaliation claims only require a good-faith belief that the conduct reported was in violation of the KCRA.[14]  Under the KCRA, retaliation claims may be properly brought so long as there is a good faith belief that the underlying conduct violated the KCRA.[15]  In *Powell*, we did not address a mixed-motive theory claim of discrimination could be brought despite not being covered by the KCRA.  Instead, we held that conduct not covered by the KCRA can give rise to a valid retaliation claim so long as the plaintiff reported it in the good-faith belief that the violation was covered by the statute.  Importantly, *Powell* did not require this Court to extend the statute, nor to interpret it.  Therefore, as Barnett argues, it is true that *Powell* concerned alleged discrimination that was not expressly covered by the KCRA, but the retaliation claim, which is what this Court upheld as properly brought, was within the express language of the statute.

---

[12] *Id.*

[13] *Id.* at 251.

[14] *Id.* at 251–52.

[15] *Id.* at 252.

6

This Court also agrees with the Court of Appeals' conclusion that *Lexington-Fayette Urban County Human Rights Commission v. Metro Management*,[16] an unpublished opinion Barnett cites, is not persuasive.[17] The Court of Appeals' panel in *Metro Management* held that an interracial couple had not established a prima facie claim of housing discrimination under the KCRA because the couple did not qualify for housing otherwise.[18] Importantly, the appellate panel's reasoning did not rest on the fact that interracial couples are not explicitly given a cause of action under the KCRA. Instead, the panel acknowledged in a footnote that interracial relationships are protected by the KCRA without citing any caselaw.[19] Barnett urges us to find *Metro Management* persuasive authority to hold those who associate with disabled persons to be covered by the KCRA, despite such status not being expressly mentioned in the statute. But, the KCRA lists familial status, race, religion, national origin, and sex as protected classes under the statute. *Metro Management* references the statute accordingly, and, like the Court of Appeals in the present case, we are not persuaded that an interracial couple's right to housing compares under the present facts to an associated individual's right to maintain employment.

---

[16] 2001–CA–001234–MR, 2003 WL 22271567 (Ky. App. Oct. 3, 2003).

[17] While unpublished appellate decisions may be considered if there are no published cases on point, they are not binding upon us. CR 76.28(4)(c).

[18] *Metro Mgmt.,* at 5*.

[19] *Id.* *5 n. 28.

Barnett also argues that the general purpose of the KCRA requires us to find a cause of action for associational discrimination. True, sometimes we consider the general purpose of a statute as we undertake statutory interpretation.[20] The purpose of the KCRA is "[t]o safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability as defined in KRS 344.010 and KRS 344.040."[21] The express purpose of the KCRA only further indicates that association, left entirely unmentioned, was not meant to be protected.

Barnett correctly argues that the KCRA is to be interpreted to provide a state-law vehicle for executing protections similar to those afforded under the federal Americans with Disabilities Act of 1990 (ADA), a statute that expressly covers associational disability.[22] And we consider the ADA when interpreting vague language in the KCRA.[23] For example, in *Noel v. Elk Brand Manufacturing Co.*,[24] the KCRA was unclear about whether the employee or the employer carried the initial burden of proving the reasonableness of an

---

[20] *Grayson*, 317 S.W.3d at 8. ("In truth, close examination of the relevant language appears to reveal a latent ambiguity. So we must consider all of the relevant accompanying facts, circumstances, and laws, including the time-honored canons of construction, in order to interpret § 93 properly.").

[21] KRS 344.020(1)(b).

[22] 42 U.S.C. § 12112(b)(4); KRS 344.020(1)(a).

[23] *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 591 (Ky. 2003) ("The Kentucky Civil Rights Act was modeled after federal law, and our courts have interpreted the Kentucky Act consistently therewith.") (citing *Bank One, Kentucky N.A. v. Murphy*, 52 S.W.3d 540, 544 (Ky. 2001)).

[24] *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 105 (Ky. App. 2000).

accommodation for a disabled employee.  Because the KCRA is to be

interpreted with the ADA's purpose and interpretation in mind, the Court of

Appeals in *Noel* appropriately considered how similar language in the ADA had

been interpreted.[25]  The appellate panel then interpreted the KCRA, guided by

the ADA's assignment of the initial burden of proof.[26]

However, in contrast to *Noel*, in this instance, we are not interpreting

vague language in the KCRA.  The statute is clear.  In *Noel*, the KCRA's text

established that one party was meant to have the initial burden of proof but

did not state which one.[27]  So, the Court of Appeals properly resorted to the

ADA's interpretation of similar language and applied it to a KCRA claim to

ascertain which party bore the initial burden of proof.  Importantly, we

encounter no language in the KCRA suggesting legislative intent to protect

---

[25] *Noel*, 53 S.W.3d at 106. ("Since the purpose of the Kentucky Civil Rights Act with respect to individuals with disabilities is to adopt the policies of the ADA at the state level and safeguard those individuals from discrimination, the interpretations of the ADA which place the initial burden of proposing reasonable accommodations on the employee should also apply to KRS 344.030(1).")

[26] *Id.*

[27] *Id.* at 105–06. ("A question that arises is whether KRS 344.030(1), which defines a 'qualified person with a disability,' places the initial burden of showing a proposed accommodation is reasonable on the employee. The statute provides, in part, that:

'[A] "[q]ualified individual with a disability" means an individual with a disability as defined in KRS 344.010 who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's disability without undue hardship on the conduct of the employers' business.

associational discrimination. As a result, there is no language for this Court to define in consideration of the ADA.

As the Court of Appeals noted in the present case, the General Assembly enacted the KCRA two years after the passage of the federal ADA. The General Assembly had the opportunity to include protection for associational discrimination claims within the KCRA as the ADA provides. But it included no such protection. As the Court of Appeals stated, we must "presume that the legislature did not intend to provide such a protection to Kentucky citizens. Thus, we must conclude that Barnett has failed to state a claim supported under Kentucky law." We are persuaded to reach the same conclusion.

### III. CONCLUSION

For the reasons stated, we affirm the Court of Appeals' opinion and uphold the trial court's order dismissing of Barnett's complaint.

Minton, C.J.; Conley, Hughes, Keller, Nickell, and VanMeter, JJ., sitting. Lambert, J., not sitting. Minton, C.J.; Conley, Hughes, Keller, Nickell, and VanMeter, JJ., concur.

COUNSEL FOR APPELLANT:

Paul Stewart Abney
Kelly Parry-Johnson
Jeremiah Wesley Reece
Soha Tajoddin Saiyed
Abney Law Office, PLLC

COUNSEL FOR APPELLEE:

Robert Edwin Maclin, III
Jaron Paul Blanford
Elizabeth Chesnut-Barrera
McBrayer, McGinnis, Leslie & Kirkland, PLLC